## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| JOSE LUIS JIMENEZ-MENDEZ, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:26-cv-02346-SHL-atc |
| CHRISTOPHER BULLOCK, Field Office | ) | |
| Director of the New Orleans Field Office, | ) | |
| U.S. Immigration and Customs Enforcement, | ) | |
| Respondent. | ) | |

## ORDER GRANTING PETITION

On March 30, 2026, Petitioner Jose Luis Jimenez-Mendez filed the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. (ECF No. 1.) Jimenez-Mendez challenges his continued detention in the West Tennessee Detention Facility as an "arriving alien" without a bond hearing. (ECF No. 1-3 at PageID 16.) He seeks immediate release from Respondent's custody. (Id. at PageID 17.) Respondent responded on April 6.[1] (ECF No. 9.) Jimenez-Mendez replied on April 7. (ECF No. 11.) For the reasons explained below, Jimenez-Mendez is entitled to immediate release, and the Petition is **GRANTED**.

## BACKGROUND

Jimenez-Mendez, a citizen of Mexico, entered the United States on July 12, 2022, and presented himself at the Hidalgo Port of Entry. (ECF No. 11 at PageID 43.) He was paroled into the United States, where he has remained ever since. (ECF No. 1-3 at PageID 12.) He is

---

[1] Respondent states that "Christopher Bullock is the appropriate Respondent because he is now the Field Office Director of the New Orleans Field Office, U.S. Immigration and Customs Enforcement." (ECF No. 9 at PageID 26 (citation omitted).) He asks the Court to dismiss respondents Scott Ladwig, DHS, and ICE. Respondent is correct. The Clerk is **DIRECTED** to modify the case caption to reflect that Christopher Bullock is the sole Respondent.

employed in Memphis at Colonial Country Club, where his supervisor has taken note of his "good moral character and work ethic." (ECF No. 11 at PageID 44.) He attends the Pentecostal Church in Memphis. (Id.) He has no criminal history. (Id. at PageID 51.)

On November 20, 2025, Jimenez-Mendez was apprehended and taken into ICE custody. (ECF No. 1-3 at PageID 12.) He remains at the West Tennessee Detention Facility in Mason, Tennessee. (ECF No. 9 at PageID 27.) The present Petition followed, the crux of which argues that Jimenez-Mendez was detained without a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Jimenez-Mendez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared ineligible to be released on bond. Until recently, however, most noncitizens in this situation were given bond hearings under a different provision, § 1226(a). See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025). Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons. For example, noncitizens with certain criminal records may not be released on bond. 8 U.S.C. § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission." "Applicants for admission" has been interpreted to mean recent arrivals, including those who have not been "physically present in the United States continuously" for the previous two years. See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

2

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a).  Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").  The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission."  And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status.  As a result, all undocumented immigrants awaiting removal are detained without a bond hearing.  This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

The Petition alleges violations of Fifth Amendment due process, the Fourth Amendment protection against unreasonable seizures, and the Eighth Amendment prohibition on cruel and unusual punishment.  (ECF No. 1 at PageID 6–7.)  He seeks his immediate release.  (ECF No. 11 at PageID 45.)

In response, Respondent contends that Jimenez-Mendez should be required to exhaust his administrative remedies; that § 1225, not § 1226, applies to him because he is an "applicant for admission"; that Jimenez-Mendez should be treated for due process purposes as if stopped at the border; that no Fourth Amendment right was violated because his detention was reasonable; and

3

that, if the Court finds that § 1226(a) applies to him, he should be granted a bond hearing and not immediate release.  (ECF No. 9 at PageID 27–37.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Jimenez-Mendez challenges his detention without bond as violative of his constitutional rights.  (ECF No. 1 at PageID 6–7.)  The Court first examines whether Jimenez-Mendez should be required to exhaust his administrative remedies, then it interprets the statutes to determine whether §1225 or § 1226 is applicable, and, finally, it analyzes the due process claim.

## I.    Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief.  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  When Congress is silent on administrative exhaustion, "sound judicial discretion governs."  Id.  Thus, the doctrine of prudential exhaustion holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse to hear habeas petitions that challenge bond determinations until a petitioner exhausts available administrative remedies.  McCarthy, 503 U.S. at 144.  The Sixth Circuit has previously applied this doctrine to dismiss petitions for lack of jurisdiction.  See Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018).  In the context of immigrant detention, some district courts require detained immigrants to exhaust their administrative remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the

4

courts will review their habeas petitions.  E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S. Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner claims.  Courts have reached these conclusions when (1) "the legal question is fit for resolution and delay means hardship, or (2) exhaustion would prove futile."  Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question.  Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21, 2025) (citing Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024)).  Further, when administrative procedures involve "an indefinite or unreasonable timeline," such delays result in hardship.  Id.  If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused.  Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought."  Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Jimenez-Mendez argues that exhaustion should not be required here because the principal questions in this case are legal, not factual; exhaustion here would be futile; and this Court has previously reached the merits of similar cases without requiring exhaustion.  (ECF No. 11 at PageID 48–49.)  Respondent argues that the Court should dismiss the Petition based on prudential exhaustion, as Jimenez-Mendez has not appealed to the BIA and received an adverse decision.  (ECF No. 9 at PageID 28–29.)  He recognizes that Congress has not imposed an administrative exhaustion requirement, and that "sound judicial discretion governs" the Court's

decision.  (Id. at PageID 28 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)).  But he points to the Sixth Circuit's opinion in Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018), and certain decisions in the Northern District of Ohio, e.g. Villalta, 2025 U.S. Dist. LEXIS 169688, which required petitioners to appeal to the BIA before seeking habeas relief under "prudential principles of exhaustion."  (ECF No. 9 at PageID 28–29.)

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody.  Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement.  And the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases. See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn. Dec. 30, 2025).  Therefore, exhaustion may only be required here based on "sound judicial discretion."  McCarthy, 503 U.S. at 144.  But, exhaustion may be excused if "the legal question is fit for resolution and delay means hardship, or exhaustion would prove futile."  Shalala, 529 U.S. at 13.

Jimenez-Mendez's failure to exhaust is excused.  First, the question he poses in the Petition is fit for resolution and undue delay would impose hardship on him.  The Parties do not dispute any material facts.  (See ECF Nos.1-3 at PageID 12–13; 9 at PageID 27.)  Thus, deciding which statute applies to Jimenez-Mendez's detention is a purely legal question, "which is right in a federal court's wheelhouse."  Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8. Further, if Jimenez-Mendez is required to pursue an appeal with the BIA, his appeal process would likely take six months or more.  See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)).  Bond hearings were designed to prevent prolonged detention during removal proceedings, which are often lengthy.

6

Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted).  Therefore, denying Jimenez-Mendez the chance to have a bond hearing merely because he did not appeal to the BIA[2] may force him "to endure six months or more of potentially unlawful detention and thus would cause him great hardship."  Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion here.  The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal immigrants who "have been residing in the United States for years."  29 I. & N. Dec. at 220–21.  Thus, any appeal would be futile, and exhaustion is excused.

## II.    Statutory Interpretation

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant."  Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'"  Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens").  Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>                . . .

---

[2] There is no evidence that Jimenez-Mendez has received an appealable decision from the immigration court.  Thus, the risk of undue delay is even greater here than in cases where, for instance, an IJ held a bond hearing and denied bond.

7

> (2)  Inspection of other aliens
>   (A)  In general
>        Subject to subparagraphs (B) and (C), in the case of an alien who is an <u>applicant</u> <u>for</u> <u>admission</u>, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien <u>shall</u> <u>be</u> <u>detained</u> for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  An "applicant for admission" is a noncitizen "present in the United States who has not been admitted."  8 U.S.C. § 1225(a)(1).  Under this section, all applicants for admission "shall be detained."  <u>Id.</u> § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

> (a)  Arrest, detention, and release
>      On a warrant issued by the Attorney General, an alien <u>may</u> <u>be</u> <u>arrested</u> <u>and</u> <u>detained</u> pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—
>      (1)  <u>may</u> <u>continue</u> <u>to</u> <u>detain</u> the arrested alien; and
>      (2)  <u>may</u> <u>release</u> the alien on—
>           (A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
>                . . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

<u>Id.</u> § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an IJ."  <u>Lopez-Campos</u>, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there is a risk of nonappearance or danger to the community."  <u>Id.</u> (citing <u>Guerra</u>, 24 I. & N. Dec. 37,

8

40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses, § 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[3]

Jimenez-Mendez argues that 8 U.S.C. § 1226(a), not § 1225(b)(2)(A), applies to his detention because the latter provision "speaks to the border-inspection context, not to the later arrest of a parolee who has been living in Tennessee for years."  (ECF No. 11 at PageID 47.) "The government's theory," according to Jimenez-Mendez, "would effectively erase the distinction between §§ 1225 and 1226 and would permit DHS to impose mandatory no-bond detention on parolees years after they entered the country."  (ECF No. 11 at PageID 48.)

Respondent argues that § 1225(b)(2)(A), not § 1226(a), applies to Jimenez-Mendez because he remains an "arriving alien" and thus is still "an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border."  (ECF No. 9 at PageID 28.)  As a result, they assert that "he is subject to mandatory detention" and not entitled to a bond hearing. (Id.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondent's contention that Jimenez-Mendez is "seeking admission."  Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The title of § 1226(a) is "Apprehension and detention of aliens."  Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the

_____

[3] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

9

meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified). Here, § 1225's title describes "arriving aliens" and those placed into "expedited removal" proceedings. But Jimenez-Mendez was not "arriving" when he was detained far away from the United States border, after having been in this country for over three years. (ECF No. 1-3 at PageID 12.) Also, the record does not show that he was eligible for expedited removal proceedings.

Further, the subject matter of § 1225 undercuts Respondent's reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."). And Respondent's reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself. "If possible, every word and every provision is to be given effect." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). But to apply § 1225(b)(2)(A) to Jimenez-Mendez would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). The record does not show that Jimenez-Mendez was seeking admission at the time of his detention, nor does it show that he had received a determination by an immigration officer that he was "not clearly and beyond a doubt entitled to be admitted." The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for more

10

than three years.  To interpret "applicant for admission" using its ordinary meaning but outside the context of the provision, as argued by Respondent, is untenable.

Also, Respondent's interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous.  That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond.  Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained.  8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .").  But, under Respondent's reading of § 1225, all arrested noncitizens must be detained without bond.  Thus, § 1226(c) would have no purpose.  Yet, courts must "give effect, if possible, to every clause and word of a statute."  Duncan v. Walker, 533 U.S. 167, 174 (2001).  Jimenez-Mendez's reading of the statute is the only one compatible with the presence of § 1226(c).  What is more, Jimenez-Mendez has no criminal record in the United States, so this mandatory detention provision cannot conceivably be applied to him.  See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Jimenez-Mendez's situation.  That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Jimenez-Mendez was charged with being removable and detained in West Tennessee.  Thus, the Attorney General has discretion under this section.  She "may continue to detain [him]" or she "may release [him] on

11

bond." (Id.)  But the Attorney General may not deny him the bond hearing to which he is entitled.  See 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Jimenez-Mendez's favor, but the Congressional intent behind § 1226(a) is also supportive.  In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondent asserts, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless."  Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who has been continuously present in the United States for more than three years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

## III.    Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully,

12

temporarily, or permanently)." Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)).  In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen.  See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020).  Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

Jimenez-Mendez argues that Respondent violated the Due Process Clause of the Fifth Amendment by detaining him without a bond hearing.  (ECF No. 1 at PageID 6.)  Respondent, however, asserts that Jimenez-Mendez's due process rights were not violated because, without a lawful entry, he should be "'treated' for due process purposes 'as if stopped at the border.'" (ECF No. 9 at PageID 32 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)

Here, because § 1226(a) applies to Jimenez-Mendez, he is owed the process given to him under that statute.  As for the Mathews factors, (1) Jimenez-Mendez has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Jimenez-Mendez's clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention.  Indeed, before he was apprehended, Jimenez-Mendez was present in the United States for over three years, was employed, and developed a community.  (ECF No. 1-3 at PageID 12–13.)  These facts indicate his ties to the United States, his desire to remain, and his expectation that he would remain free from government custody.

As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside.  Thus, Jimenez-Mendez is entitled to immediate release.  See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a).").  Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violates his due process rights.  Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of the record, Jimenez-Mendez's petition is **GRANTED**.[4]

## **CONCLUSION**

For the reasons stated above, the Petition is **GRANTED**.  Respondent is ordered to release Jimenez-Mendez immediately.  Respondent is **ENJOINED** from pursuing Jimenez-Mendez's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondent is further **ORDERED** to file a Status Report with this Court on or before April 15, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 10th day of April, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Because the Petition is granted on other grounds, the Court need not reach the questions of whether Jimenez-Mendez's detention violated the Fourth or Eighth Amendments.